IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

IVAN SANTELL-VELAZQUEZ,
Defendant.

CRIMINAL NO. 22- cr- 307 (SCC)

RECEIVED & FILED
CLERK'S OFFICE
JUL 13 2022
US DISTRICT COURT
SAN JUAN, PR

ISV

# PLEA AGREEMENT

TO THE HONORABLE COURT:

The United States of America, Defendant, Ivan Santell-Velazquez, and Defendant's counsel, Maria Dominguez, Esq. and Javier Micheo, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Count One of the Information:

<u>COUNT ONE</u>
Cyberstalking
(18 U.S.C. § 2261A(2))

From on or about January 2019, the exact date being unknown, until on or about September 2019, in the District of Puerto Rico and within the Jurisdiction of this Court, the defendant,

IVAN SANTELL-VELAZQUEZ,

with the intent to harass, another person, namely N.A.C.R., used facilities of interstate and foreign commerce, including electronic communication services, electronic mail

and internet websites, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person; in violation of 18 U.S.C. §§ 2261A(2) and 2261(b).

**2. Maximum Penalties**

Count One: The maximum statutory penalty for the offense charged in Count One of the Information, is a term of imprisonment of five years pursuant to 18 U.S.C. § 2261(b); a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3); and a supervised release term of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

**3. Sentencing Guidelines Applicability**

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. § § 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

**4. Special Monetary Assessment**

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

**5. Fines and Restitution**

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court must also impose restitution pursuant to 18 U.S.C. §§ 3663 and 2264. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

ISV

Pursuant to 18 U.S.C. § 3663(a)(1)(A) and (a)(3), Defendant agrees that restitution will not be limited to the victim named in the Information but will also include victims of relevant conduct set forth in the stipulation of facts. Defendant further agrees that the victims of relevant conduct mentioned in the stipulation of facts may provide victim impact statements and/or address the Court during sentencing if they so choose.

**6. Sentence to be Determined by the Court**

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

**7. Recommended Sentencing Guidelines Calculations**

After due consideration of the relevant factors enumerated in 18 U.S.C. §

3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

| **SENTENCING GUIDELINES CALCULATIONS COUNT ONE 18 U.S.C. § 2261A(2)** | | | | | |
|---|---|---|---|---|---|
| Base Offense Level pursuant to U.S.S.G. § 2A6.2 | | | | | 18 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | | | | | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | | | | | 15 |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |

ISV

**8. Sentence Recommendation**

As to Count One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree that Defendant may request a sentence of probation and the United States will request a sentence of 18 months of imprisonment.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

**9. No Stipulation as to Criminal History Category**

The parties do not stipulate as to any Criminal History Category for Defendant.

**10. Waiver of Appeal**

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 18 months of imprisonment or less, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release. ISV

**11. No Further Adjustments or Departures**

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

**12. Satisfaction with Counsel**

Defendant is satisfied with counsel, Maria Dominguez, Esq. and Javier Micheo, Esq., and asserts that counsel has rendered effective legal assistance.

**13. Rights Surrendered by Defendant Through Guilty Plea**

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

**14. Stipulation of Facts**

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

ISV

**15. Limitations of Plea Agreement**

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

**16. Entirety of Plea Agreement**

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

**17. Amendments to Plea Agreement**

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

**18. Voluntariness of Plea Agreement**

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

**19. Breach and Waiver**

ISV

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

**20. Potential Impact on Immigration Status**

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**21. Felony Conviction**

Defendant hereby agrees and recognizes that the plea of guilty in this case will

be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

W. Stephen Muldrow
United States Attorney

Jonathan L. Gottfried
Assistant U.S. Attorney
Chief, Violent Crimes Division
Dated: 6/30/2022

Maria Dominguez, Esq.
Javier Micheo, Esq
Counsel for Defendant
Dated: 6/30/2022

Jeanette M Collazo-Ortiz
Assistant U.S. Attorney
Dated: 6/30/2022

Ivan Santell-Velazquez
Defendant
Dated: 6/30/2022

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 6-30-22

Ivan Santell-Velazquez
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 6/30/2022

Maria Dominguez, Esq.
Javier Micheo, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Ivan Santell-Velazquez admits that Defendant is guilty as charged in the Information and admits the following:

On August 2020, the Federal Bureau of Investigation (FBI) Cyber Squad received information indicating the **University of Puerto Rico** (UPR) had been the victim of a computer intrusion perpetuated by an actor self-identified as "Slay3r_r00t". Slay3r_r00t bypassed the UPR's mail exchange server security and sent numerous unauthorized emails to faculty, administration, and students. In general, the emails signed by Slay3r_r00t boasted his hacking powers or contained political propaganda.

TSV

After analyzing the email headers, investigators identified Slay3r_r00t used third-party service SMTP2Go, provided by SMTP Corp, to spoof UPR's group email. SMTP Corp identified two accounts associated with the emails including an account created with email account ivan.santell@upr.edu. SMTP Corp. also identified multiple offending emails were sent by a device named "LAPTOP-M9I9SQ73". LAPTOP-M9I9SQ73 was registered with the UPR's Microsoft 365 Administrative Center by user Ivan Santell-Velazquez, email ivan.santell@upr.edu, a UPR Cayey student.

The FBI investigation found that long before the aforementioned emails, Santell-Velazquez had been compromising UPR accounts and conducting credential harvesting, through "spoofing" and "phishing" efforts. The phishing emails were created to look as if coming from Bonafide institutions such as the UPR administration

and included imbedded SurveyMonkey forms. For example, one email read, in Spanish, "We are updating the information associated with the institution email. The update is mandatory. If not completed, your email account associated with the institution will be canceled." The email included URL link, in Spanish, "www.upr.edu/renew," which redirected to the Survey Monkey form. The form was titled, in Spanish, "Institutional Email Renewal," and asked for personal information including the current password associated with the institutional email account.

The investigation revealed Santell-Velazquez was leveraging compromised UPR student accounts to further the credential harvesting scheme. For example, on March 31, 2021, Santell-Velazquez, while connected with Claro PR IP address 64.237.236.64, used a compromised UPR student account to send the credential harvesting email to 146 new UPR student target accounts. On April 1, 2021, Santell-Velazquez, while connected with HughesNet IP address 2001:5b0:48ca:2d68:7515:dff9:eab5:2434, used a compromised UPR student account to send the credential harvesting email to 10 new UPR student target accounts. All 156 accounts targeted belonged to UPR female students.

Claro and HughesNet advised the IP addresses used to send the credential harvesting emails and forms were assigned to accounts owned by Santell-Velazquez's father. The Claro account corresponded to an apartment in Bayamon, P.R. used by the Santell family and the HughesNet account was related to the family home in Patillas, P.R. After collecting and analyzing UPR user account access logs, the FBI

identified that these Claro and HughesNet IPs had accessed other students' UPR accounts.

After interviewing UPR female students whose accounts and credentials were compromised, the FBI learned that, between 2019 and 2021, several female students from UPR reported that their Snapchat social media accounts had also been compromised. In some cases, the students reported that private images saved to their "My Eyes Only" section of Snapchat had been stolen from their accounts and published without their authorization. These interviews also revealed that UPR female students had been receiving social engineering text messages aimed at credential harvesting using third-party phone service applications such as TextNow. The messages were made to look as if they had been sent by Snapchat and requested the "My Eyes Only" code to keep the account from being suspended.

On March 2021, the FBI Cyber Squad executed search warrants and received a response for TextNow regarding phone number 757-829-0266 which had been used in furtherance of the credential harvesting scheme. After reviewing the results, the FBI discovered several messages where Snapchat was impersonated and the "My Eyes Only" codes of UPR students were requested. The information received from TextNow also showed that Santell-Velazquez tested the functionality by exchanging text messages between his own number (787-XXX-6121) and the TextNow number (757-829-0266).

It was discovered that several of the UPR female students that fell for the credential harvesting scheme detailed above used the same passwords on other platforms including their social media accounts.

On or about January 2019, **N.A.C.R.**, a UPR-Cayey student, received a message in English that appeared to come from Snapchat. The message indicated her Snapchat account was reflecting suspicious activity and she needed to reply with her date of birth and her "My Eyes Only" code to prevent the account from being disabled. N.A.C.R. believed the text to be legitimate and replied with the requested information resulting in her Snapchat account and "My Eyes Only" folder being compromised. N.A.C.R. had stored intimate nude pictures of herself in her "My Eyes Only" folder in Snapchat for safe keeping. That same night, N.A.C.R. received the first text message from a different unknown number which included some of the intimate pictures N.A.C.R. had stored in her "My Eyes Only". N.A.C.R. continued to receive harassing text messages from unknown numbers. Some of the messages included nude images stolen from her Snapchat account.. As a result of the messages, N.A.C.R. was emotionally distressed.

ISV

On or about September 2019, while studying abroad, N.A.C.R. learned that one of the nude pictures stored in her "My Eyes Only" folder in Snapchat was posted on a Facebook page called "Oriéntate UPR Cayey" by an individual going by "Slayer_R00t". The same post featured nude images stolen in the same fashion from another student identified as J.L.L.

N.A.C.R. later learned that N.A.C.R.'s nude pictures were being featured in a Twitter page known to expose female nude images without their consent. N.A.C.R. felt humiliated by having her private pictures shared with the world without her consent and receiving harassing text messages. The situation deeply affected her.

On July 1, 2021, the FBI Cyber Squad executed search warrants on the Santell Apartment and the Santell Home. Several electronic devices were seized. Santell-Velazquez and members of his family were interviewed. Santell-Velazquez's father voluntarily provided two of Santell-Velazquez's devices located at a third location. Santell-Velazquez consented to the search of these devices.

For purposes of this Plea Agreement, Defendant agrees and stipulates that, from on or about January 2019, until on or about September 2019, with the intent to harass, another person, namely N.A.C.R., Defendant used facilities of interstate and foreign commerce, including electronic communication services, electronic mail and internet websites, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person; in violation of 18 U.S.C. §§ 2261A(2) and 2261(b).

Defendant further agrees and stipulates that he accessed and compromised other UPR accounts as well as social media accounts from female UPR students. Defendant accessed accounts from the following victims: Y.D.M.F., K.V.R., A.P.C., H.A.V., Y.R.R., A.I.R.M., N.S.S., N.M.V.M., A.P.D.P., S.R.C., A.T., A.C.D., J.A.L.L., and M.L.M. In some cases, Defendant shared the private information he obtained (including intimate pictures and videos) with third parties

who he knew would publish them online.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

At trial, the United States would have proven beyond a reasonable doubt that defendant Ivan Santell-Velazquez is guilty as charged in Count One of the Information.

Discovery was timely made available to Defendant for review.

Jonathan L. Gottfried
Assistant U.S. Attorney
Chief, Violent Crimes Division
Dated: 6/30/2022

Maria Dominguez, Esq.
Javier Micheo, Esq
Counsel for Defendant
Dated: 6/30/2022

Jeanette M Collazo-Ortiz
Assistant U.S. Attorney
Dated: 6/30/2022

Ivan Santell-Velazquez
Defendant
Dated: 6/30/2022